# In the United States Court of Federal Claims

Nos. 14-167 C, 14-168 C

(E-Filed August 1, 2017)[1]

|  |  |
|---|---|
| ALABAMA POWER COMPANY and GEORGIA POWER COMPANY, <br>                 Plaintiffs, <br> v. <br> THE UNITED STATES, <br>                 Defendant. | ) ) ) ) ) ) ) ) ) ) ) Motion for summary judgment; Nuclear Regulatory Commission Fees; Collateral estoppel |

Alan T. Rogers, Birmingham, AL, for plaintiffs.

Melissa L. Baker, Washington, DC, with whom were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Robert E. Kirschman, Jr., Director, Scott D. Austin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

OPINION

CAMPBELL-SMITH, Judge

Before the court is defendant's motion for partial summary judgment. In the motion, defendant asks the court to grant summary judgment in its favor as to the portions of plaintiffs' complaints relating to the recovery of certain fees levied by the Nuclear Regulatory Commission (NRC). See ECF No. 37.[2] According to defendant, plaintiffs litigated this issue in the previous iteration of this case, and thus, their claims are barred by the doctrine of collateral estoppel. See id. at 7. For the following reasons, defendant's motion is **GRANTED**.

---

[1] This opinion was originally filed on June 5, 2017. See ECF No. 52. Pursuant to the court's order of August 1, 2017, see ECF No. 61, it is hereby re-issued, deleting the last paragraph in the June 5, 2017 opinion that directed judgment to be entered.

[2] This opinion applies equally to both consolidated cases, but for clarity, the court will refer to documents on the docket for Case No. 14-167, unless otherwise noted.

I.      Background

This is the third round of litigation brought by plaintiffs Alabama Power Company and Georgia Power Company[3] against the United States relating to the continuing breach of a contract for the removal of spent nuclear fuel (SNF) from plaintiffs' facilities.  See ECF No. 1.[4]  Plaintiffs initially filed suit in 1998, and the court ultimately granted summary judgment in favor of plaintiffs on the issue of liability.  See S. Nuclear Operating Co., et al. v. United States, Case No. 98–614, ECF Nos. 1 (complaint), and ECF No. 234 (summary judgment).  The court determined damages in the trial that followed.  See S. Nuclear Operating Co., et al. v. United States, 77 Fed. Cl. 396 (2007).  Although the Federal Circuit reversed a portion of the damages award on appeal, it affirmed that "liability in these SNF cases has been established."  S. Nuclear Operating Co., et al. v. United States, 637 F.3d 1297, 1299 (Fed. Cir. 2011).  Following remand, the parties settled the remaining issues relating to damages accrued through December 31, 2004.  See S. Nuclear, Case No. 98-cv-614, Doc. No. 422 (stipulation on damages), Doc. No. 424 (judgment).

Because this situation involves a continuing breach on the government's part, namely the government's continuing failure to remove the SNF from plaintiffs' facilities, plaintiffs filed a second complaint in an effort to recover damages accrued from January 1, 2005 through December 31, 2010.  See Alabama Power Co., et al. v. United States, Case No. 08-237, ECF No. 1.  Plaintiffs' damages claim consisted of alleged entitlement to:  (1) costs incurred for certain plant construction, maintenance and operation; (2) costs incurred for certain activities related to the handling of SNF; and, (3) a portion of the generic fees collected by the NRC.  See generally Alabama Power Co., et al. v. United States, 119 Fed. Cl. 615 (2014).  The court held that plaintiffs were entitled to recover approximately $63 million, but that award did not include recovery of NRC fees.  See id. at 641.  Specifically, the court held that plaintiffs failed to prove the causal relationship between defendant's breach of contract and the subsequent increase in NRC fees.  See id. at 640.  Absent proof of causation, plaintiffs were not entitled to recover the fee

---

[3]     Southern Nuclear Operating Company, Inc., the holding company that owns both Alabama Power and Georgia Power, originally appeared as a co-plaintiff in each consolidated case, but has since been dismissed from both cases.  See ECF No. 15.

[4]     The history of these agreements is long and complex, and the court has discussed the details at length in previous opinions.  See S. Nuclear Operating Co. v. United States, 77 Fed. Cl. 396 (2007), aff'd in part, vacated in part, 637 F.3d 1297 (Fed. Cir. 2011); Alabama Power Co., et al. v. United States, 119 Fed. Cl. 615 (2014).  Because the specifics of the contracts at issue in the litigation more broadly are not directly relevant to the question immediately before the court, the court will not repeat them here.

differential.  See id.  Importantly, for the purpose at hand, the court concluded this section of its opinion by noting:

> To be clear, the court does not hold that plaintiffs cannot, as a matter of law, establish causation. But in this case, considering the Federal Circuit's binding precedent, plaintiffs have failed to present sufficient evidence to support a finding that the government's breach was a substantial causal factor in the NRC's decision to increase fees.

Id. at 641.

Plaintiffs have now filed a third complaint, seeking recovery of damages allegedly incurred since January 1, 2011.  See ECF No. 1 at 2.  Those damages, again, include a claim to recover a portion of the generic NRC fees.  The complaint alleges that plaintiffs have "incurred increased and/or additional regulatory fees, including but not limited to the dry storage portion of the Spent Fuel Storage/Reactor Decommissioning Fee imposed by the Nuclear Regulatory Commission, as a result of the Government's partial breach of the Standard Contract for Plant Vogtle Units 1 & 2."  Id. at 7.  Defendant has filed the instant motion for partial summary judgment on this discrete issue.  According to defendant, plaintiffs' latest claim to recover NRC fees is barred by the doctrine of collateral estoppel, and should be dismissed.  See ECF No. 37.

Briefing is complete, and the matter is ripe for a ruling on the motion for partial summary judgment.

II.    Legal Standards

The Rules for the United States Court of Federal Claims (RCFC) provide that summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a).  A fact is material if a dispute over the fact "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If a disputed fact is irrelevant or unnecessary to the court's analysis, it will not preclude summary judgment.  See id.  When considering defendant's motion, the court must draw all inferences in plaintiffs' favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  If a rational trier of fact could not find for plaintiffs, defendant is entitled to summary judgment.  See id.

As the United States Court of Appeals for the Federal Circuit (Federal Circuit) has observed, summary judgment is of particular value when the issues presented fundamentally involve questions of law.  Huskey v. Trujillo, 302 F.3d 1307, 1310 (Fed.

3

Cir. 2002) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law.")).  The central issue here is whether plaintiffs' claim to recover NRC fees is barred by the doctrine of collateral estoppel.  The doctrine of collateral estoppel, also known as issue preclusion, "protects the finality of judgments by 'preclud[ing] relitigation in a second suit of claims actually litigated and determined in the first suit.'"  See Laguna Hermosa Corp. v. United States, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (quoting In re Freeman, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (citation omitted)).

Collateral estoppel applies to bar a successive claim when: "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action." See id. (citing Freeman, 30 F.3d at 1465) (citation omitted)).

III.  Analysis

In its motion for partial summary judgment, defendant argues that with regard to their claim to recover certain NRC fees, "[p]laintiffs are seeking to re-litigate the same issue that they fully, but unsuccessfully, litigated in the previous round of litigation, Alabama Power Co., et al. v. United States, 119 Fed. Cl. 615 (2014) . . . [But,] [t]hey are precluded from so doing by the doctrine of collateral estoppel."  ECF No. 37 at 6-7. Plaintiffs oppose defendant's position, on the following logic:  (1) the recovery of NRC fees in SNF cases is not precluded as a matter of law, see ECF No. 41 at 15; (2) previous "decisions have left open the issue of whether a causal relationship exists between the DOE's breach and SFS/RD fees," see id. at 16; and (3) collateral estoppel does not bar the claim in this case because plaintiffs intend to introduce evidence not previously considered by the court, see id. at 19.

Plaintiffs' argument fundamentally mischaracterizes the collateral estoppel inquiry.  The question before the court is not whether plaintiffs might prove the necessary causal relationship between defendant's breach and the increased or additional NRC fees with the new evidence they wish to present in the instant litigation.  Rather, the question is whether plaintiffs had a full and fair opportunity to prove such causation in the previous round of litigation between the parties.

A.  The issues are identical

As an initial matter, the court finds the issues presented in the two proceedings are plainly identical.  In the second round case, the court summarized plaintiffs' argument as

4

follows: "in a non-breach world, the NRC would not have changed its fee structure and plaintiffs would not have had to pay the portion of the SFS/RD fee attributable to dry storage for the period of time in which they did not have dry storage facilities." See Alabama Power, 119 Fed. Cl. at 638 (citation omitted). Here, plaintiffs allege that they have "incurred increased and/or additional regulatory fees, including but not limited to the dry storage portion of the Spent Fuel Storage/Reactor Decommissioning Fee imposed by the Nuclear Regulatory Commission, as a result of the Government's partial breach of the Standard Contract for Plant Vogtle Units 1 & 2." ECF No. 1 at 7.

Plaintiffs argue that the present case differs from the second round of litigation in the following respect:

> [T]he Court should find that the issues presented here are not identical to those presented previously because the prior issue was about a failing of presenting sufficient proof, not a finding that no causation exists. Here, Plaintiffs have put forth the affidavit of Commissioner Merrifield which shows he will present "new persuasive testimony" on the issue of causation.

ECF No. 41 at 20. In attempting to distinguish the currently pending allegations, plaintiffs, perhaps unwittingly, admit defendant's characterization of the issue is correct. Plaintiffs try to draw a fine line between the possibility of proving causation and the accomplishment of that proof. But in so doing, plaintiffs acknowledge that the fighting issue with regard to NRC fees in this case, as it was in the second round of litigation, is whether defendant's breach of the contract caused the NRC to levy increased fees on plaintiffs.

To support the logic of the purported distinction, plaintiffs point to the fact that this court declined to apply collateral estoppel in Entergy Nuclear Indian Point 2 v. United States, 128 Fed. Cl. 526 (2016). In that case, the defendant apparently sought to bar one of plaintiff's claims on the basis of a conclusion in a separate case, brought by a separate plaintiff, Entergy Nuclear Fitzpatrick, LLC v. United States, Case No. 03-2627, 2015 WL 9025699 (Fed. Cl. Dec. 15, 2015).[5] The court held that collateral estoppel did

---

[5] The court specifically stated: "Only Indian Point Units 1 and 2 are involved in this case. Entergy owns both of these units. Id. Claims associated with Indian Point 3 were brought in a separate case before Judge Bruggink of this Court in August 2015. Entergy Nuclear Fitzpatrick, LLC, v. United States, Case No. 03-2627C, 2015 WL 9025699 (Fed. Cl. Dec. 15, 2015)." Entergy Nuclear Indian Point 2 v. United States, 128 Fed. Cl. 526, 530 (2016).

not apply due to the differences in the factual records.   See Entergy Nuclear Indian Point 2, 128 Fed. Cl. at 537.

Here, plaintiffs' lean heavily on this passage, alleging a similar difference in factual records between the two rounds of Alabama Power litigation.   See ECF No. 41 at 21-22.   The court's conclusion in Entergy Nuclear Indian Point 2, however, is not explained in detail, the entire collateral estoppel section being comprised of only four sentences.   See id.   Because it is not entirely clear how the court came to its conclusion, or how its reasoning might apply here, the case is neither binding precedent, nor persuasive authority.

The court finds in this case that the issue decided in the second round case is identical to the issue now before it—namely, whether defendant's breach of contract caused the NRC to levy increased fees on plaintiffs.

      B.      The issue was actually litigated

According to the Federal Circuit, an issue was "actually litigated" for purposes of the collateral estoppel analysis when "it was properly raised by the pleadings, was submitted for determination, and was determined," in a prior proceeding.   Banner v. United States, 238 F.3d 1348, 1354 (Fed. Cir. 2001).   See also Laguna Hermosa, 671 F.3d at 1288-89 (stating that "the requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it." (citing Freeman, 30 F.3d at 1466 and Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983)).

Plaintiffs argue that the issue at bar was not actually litigated in the second round case because the new evidence they wish to present "has never been considered and will no doubt be 'helpful' to the Court in determining whether a causal relationship exists." ECF No. 41 at 22 (citations omitted).   The court disagrees.

The evidence plaintiffs now wish to introduce may or may not have been material to the court's previous conclusion that plaintiffs failed to establish causation.   But plaintiffs cannot credibly claim that the issue of causation has not been litigated.   In analyzing the NRC fees issue in its previous opinion, the court stated:   "The central issue here is whether plaintiffs can prove that the government's breach caused the increase in fees."   Alabama Power Co. v. United States, 119 Fed. Cl. 615, 638 (2014).   The court then concluded:   "The court holds that the new evidence is insufficient to establish causation."   Id. at 640.

Because the issue of whether the defendant's breach caused an increase in NRC fees was not only litigated, but of primary concern to the court's second round analysis, it was "actually litigated" for purposes of the collateral estoppel inquiry.

    C.    The issue of causation was essential to the court's previous decision on NRC fees

It is equally clear that the court's prior finding that plaintiff failed to establish causation with regard to the NRC fees was essential to the court's decision. "The purpose of the [essential] requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." Mother's, 723 F.2d at 1571. The issue of causation was in no sense incidental or collateral. In fact, as noted above, the court described it as the "central issue," related to the potential recovery of NRC fees. Alabama Power, 119 Fed. Cl. at 638. Plaintiffs were ultimately unable to recover approximately $4.3 million as a direct result of their failure to prove causation. See id. at 624 (describing claim), 641 (denying claim). As defendant aptly notes, "[b]ecause this Court's previous finding on causation compelled a denial of the NRC fees award, it was necessary to the judgment in Alabama II." ECF No. 37 at 18.

    D.    Plaintiffs had a full and fair opportunity to litigate the issue in the first action

To determine whether a party had a full and fair opportunity to litigate an issue, the court looks to three factors: "(1) whether there were significant procedural limitations in the prior proceeding, (2) whether the party had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties." Banner, 238 F.3d at 1354 (citations omitted). Defendant convincingly argues that consideration of these factors militates in its favor. As an initial matter, neither party has identified any limit on plaintiff's ability to pursue the issue of NRC fees due to either procedural requirements or the nature of the relationship between the parties. See id.

The court notes that the evidence plaintiffs now wish to present was known to the parties at the time of the 2014 trial. In fact, plaintiffs attempted to list Mr. Merrifield as a fact witness in the 2014 trial, but the court granted defendant's motion in limine to exclude his testimony as untimely, prejudicial, and not substantially justified. See S. Nuclear, Case No. 08-237, ECF No. 129 at 1-3. In that ruling, the court specifically held that "the plaintiff[s] knew of Mr. Merrifield's existence years ago, and could have included him long before now if they considered his testimony potentially relevant to proving their claims." Id. at 3. Thus, to the extent this ruling can be seen as a procedural
7

impediment, it was of plaintiffs' own making, and should not operate to save their argument now.

As to the question of incentive, the court finds that plaintiffs had a strong financial incentive—the potential recovery of $4.3 million—to fully litigate the issue of causation with regard to NRC fees.  See ECF No. 37 at 19.  Plaintiffs dispute this position, arguing that they did not fully litigate this issue due to their relatively small financial incentive to appeal the court's denial of their claim for NRC fees.  See ECF No. 41 at 23.  Plaintiffs were awarded a total of approximately $63 million, and, they contend, recovery of that substantial sum would have been delayed by a decision to appeal the denial of $4.3 million in NRC fees.  See id. at 24.

To support this position, plaintiffs cite to Entergy Nuclear Indian Point 2 v. United States, 121 Fed. Cl. 667 (2015).  In that case, the government argued that plaintiffs' claim to recover NRC fees was barred by collateral estoppel because "the Federal Circuit decided the NRC fees claim adversely to ENIP in Consolidated Edison Company of New York, Inc. v. United States, 676 F.3d 1331 (Fed. Cir. 2012), and that this decision bars any subsequent litigation of the same issue."  Id. at 669.  The court disagreed, concluding that: "The Federal Circuit did not hold that NRC fees may not be recovered, only that in each case the evidence must be evaluated to determine whether the plaintiff met its burden of proof."  Id. at 671.

Later in the opinion, the court also held that plaintiffs did not have a full and fair opportunity to litigate the NRC fees issue in Consolidated Edison case due to a financial disincentive to seek remand after the Federal Circuit reversed the trial court's NRC fees award.  The court reasoned:

> Taking into account all of the factors presented, it is clear that significant financial considerations (namely, timely recovery of the $100 million in damages affirmed by the Federal Circuit) outweighed ENIP's incentive to retry the issue of the NRC fees which amounted to approximately $2.1 million. With strong economic considerations acting against ENIP's motivation to fully litigate the issue, the Government's conclusion that ENIP had a full and fair opportunity is incorrect.

Id. at 672.

The court acknowledges that this portion of the analysis, in isolation, appears to weigh in plaintiff's favor, but declines to apply this interpretation of the collateral estoppel doctrine to plaintiffs in this case.  First, it is dubious, in the court's view, that a party's opportunity to litigate an issue cannot be "full and fair" absent an incentive to

exhaust all possible appeals and re-trials. Such a condition is not part of the traditional collateral estoppel factors, and the court declines to read it into the analysis.

Moreover, read as a whole, the court understands the Entergy Nuclear opinion to stand primarily for the proposition that Consolidated Edison did not foreclose the opportunity for any future plaintiffs to seek recovery of NRC fees. See Entergy Nuclear, 121 Fed. Cl. at 671 ("The Federal Circuit did not hold that NRC fees may not be recovered, only that in each case the evidence must be evaluated to determine whether the plaintiff met its burden of proof.").

Here, plaintiffs had the opportunity to litigate the NRC fees issue, presenting extensive testimony and evidence at trial. See Alabama Power, 119 Fed. Cl. at 638-41. After the matter was decided in defendant's favor, plaintiffs did not appeal the decision. See Alabama Power, Case No. 08-237 (reflecting no notice of appeal on the docket). Neither party has identified any impediments, procedural or otherwise, to plaintiffs' prior case presentation. As such, the court concludes that the prior litigation concerning plaintiffs' claim to recover NRC fees was full and fair.

IV.     Conclusion

Although some facts may be in dispute in this litigation more broadly, none of the facts that are material to this analysis can fairly be debated. Considering the findings of the court in the previous round of litigation, and the allegations presented to the court in the instant matter, the court finds that plaintiffs are collaterally estopped from alleging entitlement to recovery of NRC fees. This seemingly harsh result in the context of a continuing breach reflects the nature of the collateral estoppel doctrine; it does not support a claim for the avoidance of its effect.

For the foregoing reasons, defendant's motion for partial summary judgment is **GRANTED**.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge
